IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CASTLEMORTON WIRELESS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-060 (RGA) |
| | ) | |
| COX COMMUNICATIONS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**COX COMMUNICATIONS, INC.'s OPENING BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jying@mnat.com
  *Attorneys for Defendant*
  *Cox Communications, Inc.*

OF COUNSEL:

A. Shane Nichols
Monique D. Mead
Marcos Alvarez
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309
(404) 881-7000

March 20, 2020

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF THE PROCEEDINGS ..................................................... 1

SUMMARY OF THE ARGUMENT ........................................................................ 1

LEGAL STANDARDS ......................................................................................... 1

    I.    Rule 12 (b)(6) ......................................................................................... 1

    II.   Section 101 Eligibility ............................................................................ 2

ARGUMENT ....................................................................................................... 4

    I.    Castlemorton's Infringement Claims Should be Dismissed Under
        Federal Rule 12(b)(6) Because Claim 6 of the '421 Patent is Patent-Ineligible ................ 4

        A.  Step One of the Section 101 Analysis Demonstrates that Claim 6 of the
            '421 Patent Lacks Patentable Subject Matter ................................................ 4

        B.  Step Two of the Section 101 Analysis Demonstrates that Claim 6 of the
            '421 Patent Adds Nothing of Patentable Significance ................................... 9

    II.   Castlemorton's Infringement Claims Should be Dismissed Under
         Federal Rule 12(b)(6) for Failure to State a Claim. ....................................... 10

        A.  Castlemorton Does Not Sufficiently Plead Direct Infringement ................ 11

        B.  Castlemorton Does Not Sufficiently Plead Induced Infringement ............ 15

CONCLUSION ................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018)....................................................................................4

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014)................................................................................................2, 3, 4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).......................................................................................................2

*Atlas IP, LLC v. Exelon Corp.*,
  189 F. Supp. 3d 768 (N.D. Ill. 2016) ..........................................................................11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................2, 10

*Bos. Sci. Corp. v. Nevro Corp.*,
  415 F. Supp. 3d 482 (D. Del. 2019).............................................................................15

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
  776 F.3d 1343 (Fed. Cir. 2014).....................................................................................12

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
  758 F.3d 1344 (Fed. Cir. 2014)............................................................................. *passim*

*Elec. Power Grp., LLC v. Alstom SA*,
  830 F.3d 1350 (Fed. Cir. 2016)......................................................................................9

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016).......................................................................................4

*Genetic Techs. Ltd. v. Merial LLC*,
  818 F.3d 1369 (Fed. Cir. 2016).......................................................................................4

*Gottschalk v. Benson*,
  409 U.S. 63 (1972)...........................................................................................................5

*I/P Engine, Inc. v. AOL Inc.*,
  576 F. App'x 982 (Fed. Cir. 2014) (Mayer, C., concurring) ........................................4

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
  850 F.3d 1332 (Fed. Cir. 2017)......................................................................................6

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
  566 U.S. 66 (2012)......................................................................................................2, 3, 10

*Minkus Elec. Display Sys. Inc. v. Adaptive Micro Sys. LLC*,
  No. 10-666-SLR, 2011 WL 941197 (D. Del. Mar. 16, 2011) ..................................16

*Modern Telecom Sys., LLC v. TCL Corp.*,
  No. 17-583-LPS-CJB, 2017 WL 6524526 (D. Del. Dec. 21, 2017)........................11

*Monec Holding AG v. Motorola Mobility, Inc.*,
  897 F. Supp. 2d 225 (D. Del. 2012)........................................................................17

*Network Managing Sols., LLC v. AT&T Inc.*,
  C.A. No. 16-cv-295 (RGA), 2017 WL 472080 (D. Del. Feb. 3, 2017)....................11

*OIP Techs., Inc. v. Amazon.com, Inc.*,
  788 F.3d 1359 (Fed. Cir. 2015)..................................................................................4

*Parker v. Flook*,
  437 U.S. 584 (1978)....................................................................................................5

*Pragmatus Telecom, LLC v. Ford Motor Co.*,
  No. 12-92-RGA, 2012 WL 2700495 (D. Del. July 5, 2012) ..................................16

*Realtime Adaptive Streaming LLC v. Netflix, Inc.*,
  No. 17-1692-CFC-SRF, 2018 WL 6521978 (D. Del. Dec. 12, 2018) ......................6

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
  855 F.3d 1322 (Fed. Cir. 2017)..........................................................................6, 8, 9

*ReefEdge Networks, LLC v. Juniper Networks, Inc.*,
  29 F. Supp. 3d 455 (D. Del. 2014).........................................................................16

*SuperInterconnect Techs. LLC v. HP Inc.*,
  No. 19-0169-CFC, 2019 WL 6895877 (D. Del. Dec. 18, 2019) ............................11

*TPP Tech LLC v. Zebra Techs. Corp.*,
  403 F. Supp. 3d 382 (D. Del. 2019)...........................................................................4

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
  874 F.3d 1329 (Fed. Cir. 2017).........................................................................6, 7, 9

*Ultramercial, Inc. v. Hulu, LLC*,
  772 F.3d 709,716 (Fed. Cir. 2014), *cert. denied, Ultramercial v. WildTangent*,
  135 S. Ct. 2907 (2015)................................................................................................3

## Statutes

35 U.S.C. § 101 ................................................................................ *passim*

**Rules**

Fed. R. Civ. P. 8(a)(2)............................................................................................................15

Fed. R. Civ. P. 12(b)(6)................................................................................................. *passim*

## NATURE AND STAGE OF THE PROCEEDINGS

On January 15, 2020, Plaintiff Castlemorton Wireless, LLC ("Castlemorton") filed its Complaint accusing Defendant Cox Communications, Inc. ("Cox") of patent infringement. Specifically, Castlemorton claims that Cox directly and indirectly infringes Claim 6 of U.S. Patent No. 7,835,421 ("the '421 Patent").

Cox now moves to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim for relief on the basis of (1) failure to claim patent eligible subject matter under 35 U.S.C. § 101, and (2) the Complaint's failure to adequately plead infringement. This is Cox's opening brief in support of its motion.

## SUMMARY OF THE ARGUMENT

Castlemorton has only alleged infringement of Claim 6 of the '421 Patent. Claim 6 is invalid as a matter of law, because it is directed solely to "organizing information through mathematical correlations," which the Federal Circuit Court of Appeals has determined to be a patent-ineligible abstract idea. Claim 6 recites only a three-step mathematical algorithm for processing data embodied in an electromagnetic signal. The Complaint should, therefore, be dismissed in accordance with Rule 12(b)(6).

Castlemorton's Complaint is also deficient because its direct and induced infringement allegations do not satisfy the pleading standard. Rather than pleading facts alleging Cox's infringement of the '421 Patent, Castlemorton simply alleges that anyone who complies with the 802.11b/g WiFi standard necessarily infringes its patent. Accordingly, Castlemorton's infringement claims should be dismissed in accordance with Rule 12(b)(6).

## LEGAL STANDARDS

### I.   RULE 12 (B)(6)

Stating a claim upon which relief may be granted "requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that while factual allegations are taken as true, this assumption "is inapplicable to legal conclusions.").

## II.   SECTION 101 ELIGIBILITY

Section 101 of the Patent Act defines patent-eligible subject matter. 35 U.S.C. § 101. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." *Id.*

### A.   Abstract Ideas Are Not Patent-Eligible Subject Matter

The Supreme Court has recognized three categories of subject matter not eligible for patentability: laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). The purpose behind those exceptions is to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012). "A process is not unpatentable simply because it contains a law of nature or a mathematical algorithm," however, as "an application of law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." *Id.* at 71. "[T]o transform an unpatentable law of nature into a patent-eligible application of such a law, one must do more than simply state the law of nature while adding the words 'apply it.'" *Id.* at 72 (emphasis omitted). "The 'abstract ideas' category embodies 'the longstanding rule that an idea of itself is not patentable. *Alice*, 573 U.S. at 218 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

## B.      Section 101 and the Supreme Court's Two-Part Test

In *Alice*, the Supreme Court set forth a two-part test, reaffirming the framework laid out in *Mayo* "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Id*. at 217.

First, the court must determine whether the claims are drawn to a patent-ineligible concept, *e.g.* an abstract idea. *Id.* If the court finds the heart of the claims to be abstract, it proceeds to the second step and must look to "the elements of the claim both individually and as an 'ordered combination'" to see if there is an "'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id*. at 217-18 (alteration in original). "A claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].'" *Id.* at 221 (alterations in original) (quoting *Mayo*, 566 U.S. at 72). "[S]imply appending conventional steps, specified at a high level of generality, to . . . abstract ideas cannot make those . . . ideas patentable." *Mayo*, 566 U.S. at 82. Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Alice*, 573 U.S. at 222 (quoting *Bilski v. Kappos*, 561 U.S. 593, 610-11 (2010)).

For the second step, a claim that merely adds "well-understood, routine, conventional activity" or technology does not constitute an "inventive concept." *Mayo*, 566 U.S. at 72. Moreover, for this second step, the machine-or-transformation test can be a "useful clue," although it is not determinative. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709,716 (Fed. Cir. 2014), *cert. denied*, *Ultramercial v. WildTangent*, 135 S. Ct. 2907 (2015).

### C.     Determination of Subject Matter Eligibility is Appropriate at the Pleading Stage

Patent eligibility under § 101 is a question of law suitable for resolution on a motion to dismiss.  *See OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015); *Genetic Techs. Ltd. v. Merial LLC,* 818 F.3d 1369, 1373 (Fed. Cir. 2016) ("We have repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion.").  Claim construction is not a prerequisite to a 35 U.S.C. § 101 dismissal.  *Aatrix Software, Inc. v. Green Shades Software, Inc.,* 882 F.3d 1121, 1125 (Fed. Cir. 2018)*; TPP Tech LLC v. Zebra Techs. Corp.,* 403 F. Supp. 3d 382, 388 (D. Del. 2019) (granting motion to dismiss under § 101 without claim construction).  As courts have recognized, early resolution of such claims can "spare both litigants and courts years of needless litigation." *I/P Engine, Inc. v. AOL Inc.*, 576 F. App'x 982, 996 (Fed. Cir. 2014) (Mayer, C., concurring) (noting the "clear advantages to addressing section 101's requirements at the outset of litigation" including obviating the need for "lengthy claim construction").

## ARGUMENT

### I.     CASTLEMORTON'S INFRINGEMENT CLAIMS SHOULD BE DISMISSED UNDER FEDERAL RULE 12(B)(6) BECAUSE CLAIM 6 OF THE '421 PATENT IS PATENT-INELIGIBLE

Claim 6 of the '421 Patent fails under both prongs of the *Alice* test for subject matter eligibility because Claim 6 is directed to an abstract idea and recites no inventive concept.

### A.     Step One of the Section 101 Analysis Demonstrates that Claim 6 of the '421 Patent Lacks Patentable Subject Matter

As the Federal Circuit noted, although the Supreme Court "has not established a definitive rule to determine what constitutes an 'abstract idea' sufficient to satisfy the first step of the *Mayo/Alice* inquiry," the Court did recognize that mathematical formulas, regardless of whether they are known in the prior art, are one category of patent ineligible abstract ideas. *Enfish, LLC v.*

*Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016); *see also Parker v. Flook*, 437 U.S. 584, 591 (1978); *Benson*, 409 U.S. at 64.  Indeed, claims drawn to the abstract idea of "organizing information through mathematical correlations" are patent-ineligible.  *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1350 (Fed. Cir. 2014) (reasoning that the method defined in the patent-in-suit "claims an abstract idea because it describes the process of organizing information through mathematical correlations and is not tied to a specific structure or machine").

Here, Claim 6 is directed solely to the abstract idea of "organizing information through mathematical correlations," which the Federal Circuit has specifically held to be patent-ineligible subject matter.  *See, e.g., Digitech Image Techs., LLC*, 758 F.3d at 1350.  Claim 6 recites a method for detecting the carrier frequency of a direct-sequence, spread-spectrum signal.  Claim 6 is directed to an abstract idea because it merely recites a method of analyzing information using mathematical formulas.

Claim 6 includes three steps:

> 6.  A method of detecting the carrier frequency of a DSSS signal including the steps of:
>
>> *subtracting* the DSSS signal from a signal having a higher frequency than an [sic] frequency in the DSSS signal spectrum to produce DSSS signal frequency spectrum inversion;
>>
>> *correlating* the inverted and non-inverted DSSS signals at substantially zero relative time delay; and
>>
>> *identifying* the said carrier frequency from the correlation signal.

'421 Patent, col. 4, ll. 34-43 (emphasis added).  Claim 6 describes processing information – in the form of a direct-sequence, spread-spectrum (DSSS) electromagnetic signal – using only mathematical formulas or correlations.  Those mathematical correlations are embodied by the three steps of Claim 6.

In *Realtime Adaptive Streaming LLC*, Judge Connolly held that a method that "applies a compression algorithm based on the data received" recited an ineligible abstract process consisting of a "formulaic method of adding an algorithm that changes the data to a new form of data." *Realtime Adaptive Streaming LLC v. Netflix, Inc.,* No. 17-1692-CFC-SRF, 2018 WL 6521978, at *7 (D. Del. Dec. 12, 2018) (citing to *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1326-27 (Fed. Cir. 2017)) and *Digitech,* 758 F.3d at 222 (the patent was directed to the "abstract idea of encoding and decoding image data," and was essentially a process that "started with data, added an algorithm, and ended with a new form of data."). Similarly, in *Two-Way Media Ltd.*, the Federal Circuit found that a claim requiring "converting," "routing," "controlling," "monitoring" and "accumulating records" relates to "manipulat[ing] data but fail[s] to do so in a non-abstract way." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337-38 (Fed. Cir. 2017).

As with the patent claims in those cases, Claim 6 of the '421 Patent recites steps for manipulating data, but fails to do so in a non-abstract way. Specifically, Claim 6 recites a method of receiving and processing electronic information that involves nothing more than manipulating existing information (*i.e.*, an electromagnetic signal) with mathematical algorithms (*i.e.*, frequency inversions and correlations) to generate new information. Simply "reciting . . . data manipulation steps," without additional limitations, merely constitutes an abstract idea. *Intellectual Ventures I LLC v. Capital One Fin. Corp.,* 850 F.3d 1332, 1340 (Fed. Cir. 2017).

### 1.  The Subtracting Step of Claim 6

Claim 6 first recites "subtracting the DSSS signal from a signal having a higher frequency than an [sic] frequency in the DSSS signal spectrum to produce DSSS signal frequency spectrum inversion." This step of Claim 6 is simply the abstract idea of combining the DSSS signal of

interest with another signal having a known frequency to produce "difference frequencies." '421 Patent, col. 2, ll. 31-41.  The specification of the '421 Patent states that a "difference frequency is a frequency-inverted version of the original DSSS signal." *Id.*

The specification adds that determining the "difference frequency" of a DSSS signal is simply performed by applying a well-known mathematical function for "frequency inverting" a DSSS signal.  "Let the original DSSS signal be $f(t)cos\ \omega_1\ t$, where $\omega_1$ is the suppressed [*i.e.*, unknown] carrier angular frequency and $f(t)$ is the PSK spreading function having values ±1." '421 Patent, col. 2, ll. 48-50.  "If the local oscillator angular frequency is $\omega_2$, then the inverted signal is $f(t)cos\ (\omega_2 - \omega_1)\ t$." '421 Patent, col. 2, ll. 50-52.  Because the "difference frequency is a frequency-inverted version of the original DSSS signal," the difference frequency is mathematically represented as $f(t)cos\ (\omega_2 - \omega_1)\ t$. '421 Patent, col. 2, ll. 31-41.

The process of subtracting a DSSS signal to produce difference frequencies, as explained above, recites nothing more than the information resulting from the application of a well-known mathematical formula.  In *Two-Way Media*, the Federal Circuit found that the functional results of "converting," "routing," and "controlling" failed to sufficiently describe the manipulation of data in a non-abstract way.  874 F.3d 1329, 1337-38.  Likewise, the functional result of "subtracting" two signals, as recited in the first step of Claim 6, fails to describe the manipulation of information (*i.e.* an electromagnetic signal) in a non-abstract way.

### 2.  The Correlating Step of Claim 6

The second step of Claim 6 recites "correlating the inverted and non-inverted DSSS signals at substantially zero relative time delay." '421 Patent, col. 4, ll. 40-41.  The specification of the '421 Patent demonstrates that this step merely describes applying another well-known mathematical correlation to a DSSS signal.  In particular, the specification describes "multipl[ying]

the difference frequency . . . with the time-delayed [DSSS signal of interest] . . . to produce the [beat frequency] signal." '421 Patent, col. 2, ll. 41-43.  The specification describes this step as the mathematical result ($\mathbf{M_o}$) of multiplying the original DSSS signal of interest ($f(t)cos\ \omega_1 t$) with the inverted form resulting from the "subtraction step" described above:

$$\mathbf{M_o[\ f(t)cos\ \omega_1 t\ ]} \times \mathbf{[\ f(t)cos\ (\omega_2 - \omega_1)t\ ]}$$

'421 Patent, col. 2, ll. 52-53.

The specification describes simple math used to simplify this equation.  '421 Patent, col. 2, ll. 55-57.  The inventor defined his invention as applying to "binary phase shift keying (PSK)," where "$f(t)$ is the PSK spreading function having values ±1." '421 Patent, col. 1, ll. 13-15, col. 2, ll. 49-50.  Because $f(t)$ is limited to the "binary" values of -1 or 1, $[f(t)]^2$ must always equal 1. When the $[f(t)]^2$ term is thus eliminated (because it always equals 1), the equation "reduces to a pure sine wave beat frequency signal $cos(\omega_2 - 2\omega_1)t$, … since $[f(t)]^2 = 1$, $f(t)$ having ±1 values only." '421 Patent, col. 2, ll. 55-57.

In *Digitech*, the Federal Circuit held that method claims "describ[ing] a process of organizing information through mathematical correlations" which was "not tied to a specific structure or machine" were directed to a patent-ineligible abstract idea.  758 F.3d at 1350.  The second step of Claim 6 similarly describes the process of organizing information (*i.e. $cos(\omega_2 - 2\omega_1)t$*) through mathematical correlations.  A method like that of Claim 6 "whereby a user starts with data, codes that data using 'at least one multiplication operation,' and ends with a new form of data," is a patent-ineligible abstract idea.  *RecogniCorp, LLC*, 855 F.3d at 1327.

### 3.  The Identifying Step of Claim 6

The third and final step of Claim 6 recites "identifying the said carrier frequency from the correlation signal."  But the specification of the '421 Patent makes clear that this is a simple result

of the mathematical formulas described above.  More specifically, the specification explains that the "local oscillator frequency $\omega_2$ is known . . . the carrier frequency $\omega_1$ may be determined from the beat frequency $(\omega_2 - 2\omega_1)$." '421 Patent, col. 2, ll. 57-59.  Therefore, the third step of Claim 6 recites nothing more than the use of simple math to solve for the only unknown variable – *i.e.*, the unknown carrier frequency $\omega_1$.  In the same way that "monitoring" or "reciting" data is an abstract idea, so too is simply "identifying" data.  *Two-Way Media Ltd.*, 874 F.3d 1329, 1337-38 ("monitoring," and "accumulating records," [] does not sufficiently describe how to achieve these results in a non-abstract way") (citing *Elec. Power Grp., LLC v. Alstom SA*, 830 F.3d 1350, 1351 (Fed. Cir. 2016) (finding the challenged claims were directed to systems and methods for achieving real-time performance monitoring of an electric power grid").

### B. Step Two of the Section 101 Analysis Demonstrates that Claim 6 of the '421 Patent Adds Nothing of Patentable Significance

"To save a patent at step two, an inventive concept *must be evident in the claims*." *RecogniCorp, LLC*, 855 F.3d at 1327; *Two-Way Media Ltd.*, 874 F.3d at 1338-39 ("[t]he main problem that [plaintiff] cannot overcome is that the *claim*—as opposed to something purportedly described in the specification—is missing an inventive concept") (emphasis in original).  Here, Claim 6 does not recite any elements that provide the "significantly more" required to transform it into a patent-eligible application of the abstract idea.  In fact, claim 6 does not include any tangible elements other than the requirement that the steps be performed on electromagnetic signals, which the Federal Circuit has held are merely physical embodiments of data and not patent eligible.  *Digitech*, 758 F.3d at 1350 (quoting *In re Nuijten*, 500 F.3d 1346, 1351, 1353, 1357 (Fed. Cir. 2007)).

In *Digitech*, the Federal Circuit held that the claimed method was patent-ineligible because it involved "taking two data sets and combining them into a single data set," which amounted to

nothing more than "manipulate[ing] existing information to generate additional information." 758 F.3d at 1351. Because "nothing in the claim language expressly tie[d] the [claimed] method to an image processor" or any other specific structure or machine, the Federal Circuit held that it "need not decide whether tying the method to an image processor would lead us to conclude that the claims are directed to patent eligible subject matter in accordance with the Supreme Court's *Mayo* test." *Id*. (citing *Alice*, 573 U.S. at 226).

Nor does Claim 6 recite anything that transforms a particular article into a different state or thing. Although the '421 Patent's specification describes the use of an oscillator to generate a signal having a "frequency . . . higher than the largest frequency in the DSSS signal of interest," '421 Patent, col. 2, ll. 31-41, a "multiplier [that] multiplies the difference frequency . . . with the time-delayed signal [of interest] … to produce the [beat frequency] signal, *id*. at col. 2, ll. 41-47, a delay unit… to correct for any delay occurring in frequency inversion by synchronising [sic] the inverted and non-inverted signals," and "a frequency meter or other conventional means" to detect the "DSSS carrier frequency," *id*. at col. 3, ll. 3-6, these tangible devices are not recited in Claim 6. Accordingly, the Court need not decide the hypothetical question of whether tying the abstract idea of Claim 6 to such devices would support a conclusion that the method of Claim 6 is directed to patent eligible subject matter.

## II.   CASTLEMORTON'S INFRINGEMENT CLAIMS SHOULD BE DISMISSED UNDER FEDERAL RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM.

To adequately plead a claim, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### A.     Castlemorton Does Not Sufficiently Plead Direct Infringement

Castlemorton's sweeping assertion that "the Cox '421 Products ***necessarily infringe*** the '421 Patent" because they "comply[] with the 802.11b and/or 802.11g standard" is insufficient to plausibly plead infringement (D.I. 1, ¶ 61) (emphasis added).   Courts in this District have recognized that simply alleging that a defendant complies with an industry standard is insufficient to plead patent infringement.  *See SuperInterconnect Techs. LLC v. HP Inc.*, No. 19-0169-CFC, 2019 WL 6895877, at *2 (D. Del. Dec. 18, 2019) (dismissing complaint that failed to aver how the asserted claim's elements read on the accused product that complied with an industry standard); *Modern Telecom Sys., LLC v. TCL Corp.*, No. 17-583-LPS-CJB, 2017 WL 6524526, at *2 (D. Del. Dec. 21, 2017); *Network Managing Sols., LLC v. AT&T Inc.*, C.A. No. 16-cv-295 (RGA), 2017 WL 472080, at *1 (D. Del. Feb. 3, 2017).

To sufficiently plead infringement, Castlemorton must allege how Cox's products practice the three steps of Claim 6.  Despite devoting 35 paragraphs of its Complaint to allegations that Claim 6 reads on the 802.11b/g industry standard for WiFi (D.I. 1, ¶¶ 53-88), Castlemorton fails to allege how Cox practices the steps of Claim 6.  Nor did Castlemorton demonstrate how mere compliance with the WiFi standards would necessarily infringe.  *See Atlas IP, LLC v. Exelon Corp.*, 189 F. Supp. 3d 768, 775 (N.D. Ill. 2016) ("[G]iven the investigation that Rule 11(b) requires before filing a complaint, it is difficult to imagine how an action for infringement could be brought without a tentative but nonetheless coherent theory of . . . how the accused products practice . . . each of [the infringing claims'] elements.").  Instead, Castlemorton's Complaint attempts to confuse the Court with disconnected jargon, apparently intended to obscure Castlemorton's failure to aver facts demonstrating Cox's infringement of Claim 6 or any other claim of the '421 Patent.

Though the '421 Patent issued with two independent claims, Castlemorton has asserted only one of them, Claim 6[1] (*see* D.I. 1, ¶ 83).   Claim 6, describes "a method for detecting the carrier frequency of a DSSS signal":

> 6.   A method of detecting the carrier frequency of a DSSS signal including the steps of:
>
> [1] subtracting the DSSS signal from a signal having a higher frequency than an [sic] frequency in the DSSS signal spectrum to produce DSSS signal frequency spectrum inversion;
>
> [2] correlating the inverted and non-inverted DSSS signals at substantially zero relative time delay; and
>
> [3] identifying the said carrier frequency from the correlation signal.

'421 Patent, col. 4, ll. 34–43.   Claim 6 recites a three-step algorithm for "detecting the carrier frequency of a DSSS signal."   The three steps of Claim 6 are: (1) ***subtracting*** the DSSS signal having an unknown carrier frequency ("the unknown DSSS signal") from another signal; (2) ***correlating*** the unknown DSSS signal with the result of the subtraction step; and (3) ***identifying*** a carrier frequency from the result of the correlating step.   '421 patent 4:36–43.

Figure 3 of the '421 Patent purports to depict graphical representations of the results of the three steps of Claim 6:

> Curve "B" - the original DSSS signal having an unknown carrier frequency;
>
> Curve "C" - the signal resulting from the subtraction step; and
>
> Curve "D" - the "beat frequency" signal resulting from the correlating step.

'421 Patent, Fig. 3, col. 2, ll. 25-30.

---

[1] Plaintiff's Complaint states that "at least" the identified claims of the '421 Patent are allegedly infringed, leaving open the possibility that it might assert other claims against Defendant.   Courts routinely analyze subject matter eligibility based on representative claims as sanctioned by the Federal Circuit. *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).



FIG. 3

The specification of the '421 Patent describes the "invention" as "a form of self-correlation of a signal with a frequency-inverted version of itself." '421 Patent, col. 3, ll. 7–10.   The specification also identifies the mathematical formulas used in each of the three steps of Claim 6:

Let the original DSSS signal be $f(t)\cos \omega_1 t$, where $\omega_1$ is the suppressed carrier angular frequency and $f(t)$ is the PSK spreading function having values $\pm 1$. If the local oscillator angular frequency is $\omega_2$, then the inverted signal is $f(t)\cos(\omega_2-\omega_1)t$. The output $M_o$ of multiplier **7** is accordingly:

$$M_o [f(t)\cos \omega_1 t] \times [f(t)\cos(\omega_2-\omega_1)t]$$

This reduces to a pure sine wave beat frequency signal $\cos(\omega_2-2\omega_1)t$ (curve d) plus other components and noise, since $[f(t)]^2=1$, $f(t)$ having $\pm 1$ values only. The local oscillator frequency $\omega_2$ is known, and hence the carrier frequency $\omega_1$ may be determined from the beat frequency $(\omega_2-2\omega_1)$.

'421 Patent, col. 2, ll. 48–59.

Castlemorton's Complaint alleges that Cox "necessarily" infringes Claim 6 of the '421

Patent because some products Cox distributes to its customers comply with WiFi standards 802.11b and/or 802.11g (D.I. 1, ¶¶ 55, 61).  According to Castlemorton, "[a]ny implementation of the 802.11b and/or 802.11g standards would infringe the '421 Patent as every possible implementation of the standard requires:

> detecting the carrier frequency of a DSSS signal;
>
> subtracting the DSSS signal from a signal having a higher frequency than an frequency in the DSSS signal spectrum to produce DSSS signal frequency spectrum inversion;
>
> correlating the inverted and non-inverted DSSS signals at substantially zero relative time delay; and
>
> identifying the said carrier frequency from the correlation signal."

(D.I. 1, ¶ 79).

Although Castlemorton's sweeping infringement theory is that anyone who implements or complies with the 802.11b/g WiFi standard ***necessarily*** infringes the '421 Patent, its allegations of direct infringement fail to allege ***how*** Cox implements the three steps of Claim 6.  The only mention in the Complaint regarding Cox in connection with the "subtracting" step is:

> The Cox '421 Products perform the step of ***subtracting*** the spread spectrum signal from a signal with a higher frequency than the DSSS signal spectrum. For example, the Cox '421 Products contain functionality for a processing gain of at least 10 dB. This is performed by the Cox '421 Products by chipping the baseband signal at 11 MHz with an 11-chip code.

(D.I. 1, ¶ 74) (emphasis added).  But Castlemorton fails to state a basis for its allegation that Cox's products ***subtract*** signals of any kind (*id.* at ¶¶ 53-88).  Nor does Castlemorton's Complaint state a basis for its contention that Cox's products "contain functionality for processing gain, that Cox products "chip[] a baseband signal," or how any of this relates to the subtracting step of Claim 6 (*id.* at ¶ 74).  Castlemorton's Complaint likewise fails to state how any Cox product performs either the "correlating" step (*see id.* at ¶¶ 68, 71, 77, 78, 80) or the "identifying" step (*see id.* at ¶¶ 68, 79, 83).

14

**B.     Castlemorton Does Not Sufficiently Plead Induced Infringement**

"For an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer specifically intended another party to infringe the patent *and knew* that the other party's acts constituted infringement." *Bos. Sci. Corp. v. Nevro Corp.*, 415 F. Supp. 3d 482, 491 (D. Del. 2019) (quoting *Lifetime Indus., Inc. v. Trim-Lok, Inc.,* 869 F.3d 1372, 1379 (Fed. Cir. 2017)) (internal quotation omitted) (emphasis added).   Here, Castlemorton merely relies upon generalities, boilerplate language, and legal conclusions in an attempt to allege induced infringement.  Such conclusory statements fail to allege sufficient facts to establish a plausible claim of induced infringement, as required by Federal Rule of Civil Procedure 8(a)(2).

Castlemorton's induced infringement claim must fail because Castlemorton does not even allege that Cox knew of the '421 Patent before providing its allegedly infringing products to "customers and end users" (D.I. 1, ¶ 17).  *See Bos. Sci. Corp.*, 415 F. Supp. at 491 (D. Del. 2019) ("Contributory infringement thus requires 'a showing that the alleged contributory infringer knew that the combination for which his component was especially designed was both patented and infringing.'") (quoting *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488). Castlemorton's inducement claim fails to allege a single, well-pleaded fact suggesting that Cox specifically *intended* its customer and/or end user to infringe the '421 Patent or that Cox *knew* that its customers and/or end users were committing acts that constituted infringement.

All Castlemorton alleged is that Cox "knew of the '421 Patent and knew of its infringement, including by way of this lawsuit" (D.I. 1, ¶ 85), that it "intended to induce Patent infringement . . . and had knowledge that the inducing acts would cause infringement or was willfully blind" (*id*. at ¶ 86), and that it "performed the acts that constitute induced infringement . . . with knowledge that the induced acts would constitute infringement . . . ." (*id*.).  These allegations, however, are

nothing more than unsupported legal conclusions that provide no factual detail regarding the basis for Castlemorton's assertions. Thus, those statements do not satisfy the *Iqbal/Twombly* pleading standard. *See, e.g., Pragmatus Telecom, LLC v. Ford Motor Co.,* No. 12-92-RGA, 2012 WL 2700495, at *1 (D. Del. July 5, 2012)(dismissing inducement claims where "[s]pecific intent [was] alleged generally," but "[n]o facts [were] alleged from which one could infer that the allegation [wa]s plausible"); *Minkus Elec. Display Sys. Inc. v. Adaptive Micro Sys. LLC,* No. 10-666-SLR, 2011 WL 941197, at *3 (D. Del. Mar. 16, 2011) (determining that plaintiff "fail[ed] to allege sufficient facts" and instead "resort[ed] to a mere recitation of the elements for indirect infringement, which is insufficient").

Castlemorton further alleges, without any factual support other than links to webpages (allegedly found at the Internet address www.cox.com), that Cox "provides documentation and training materials that cause customers and end users . . . to utilize the products in a manner that directly infringe" and that Cox "engaged in such inducement to promote the sales of the Cox '421 Products, *e.g*., through Cox user manuals, product support, marketing materials, and training materials to actively induce the user of the accused products." (D.I. 1, ¶ 86). But, there is no indication of how those materials necessarily induce infringement. Therefore, because Castlemorton failed to show how the website links provided in its Complaint purportedly demonstrate that: (1) Cox instructs and encourages third-parties; (2) any such instruction demonstrates knowledge of the asserted patent, let alone specific intent to cause infringement; or (3) that Cox has knowledge that its customers would commit infringement, its claim for induced infringement must be dismissed. *See, e.g., ReefEdge Networks, LLC v. Juniper Networks, Inc.*, 29 F. Supp. 3d 455, 459 (D. Del. 2014) (dismissing induced infringement claims where plaintiff accused defendant of "advertising and providing technical support services for allegedly infringing

products" and holding that marketing activities do not induce infringement unless "coupled with actual knowledge of the patents-in-suit and awareness that the accused products infringe"); *Monec Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 234 (D. Del. 2012) (plaintiff's "conclusory averments" that defendant "sell[s], advertis[es], suppl[ies] and instruct[s] its respective customers on the use of the infringing product" were insufficient to establish specific intent).

## **CONCLUSION**

For the foregoing reasons, Cox respectfully requests that the Court dismiss the Compliant because Claim 6 of the '421 Patent is invalid under 35 U.S.C. § 101 and because the Complaint fails to plead sufficient facts to support its allegations of direct or induced infringement.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

OF COUNSEL:

A. Shane Nichols
Monique D. Mead
Marcos Alvarez
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309
(404) 881-7000

Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jying@mnat.com
  *Attorneys for Defendant*
  *Cox Communications, Inc.*

March 20, 2020

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 20, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 20, 2020, upon the following in the manner indicated:

Stephen B. Brauerman                                    *VIA ELECTRONIC MAIL*
BAYARD, P.A.
600 N. King Street, Suite 400
Wilmington, DE 19801
*Attorneys for Plaintiff*


*/s/ Jennifer Ying*
_____
Jennifer Ying (#5550)